Good morning. May it please the Court. Jeanette Peterson here this morning with the Institute for Justice, representing the Pellants, Many Cultures, One Message, and conservative enthusiasts. With me today is William Maurer, also with the Institute for Justice. I'd like to reserve five minutes for rebuttal, please. Five, okay. Watch it. It counts down. Okay. Thank you. This is a First Amendment challenge to a law that requires citizens to register with the state and comply with complicated disclosure laws simply to speak out about public issues. The law at issue here goes far beyond requiring disclosure of the financing of campaigns, paid lobbying for hire, or the direct formation of government policy. Instead, it inserts the government into citizen-to-citizen speech and compels the collection and dissemination of information regarding such speech for no good reason. If there's an overarching theme to the district court's errors in this case, it is the court's apparent conclusion that the First Amendment imposes no meaningful limit on campaign finance disclosure laws. But our precedent makes clear that specifics matter. Before upholding a disclosure law, this court must examine the who, the what, the when, the where, and the why of the information mandated to be disclosed by the government through the particular law at issue. The law is clear that federal courts are not simply to rubber stamp government-imposed burdens on political speech because they may be generically described as involving disclosure. The grassroots lobbying law here is a direct intrusion into the expressive activities of citizens, the likes of which have never been upheld by this court or the Supreme Court. The district court failed to examine the specifics and concluded that this law is constitutional. It is not. In upholding the grassroots lobbying law, the district court also struck the testimony of appellants' expert without holding an evidentiary hearing or even giving the appellants the opportunity to address why their expert testimony was admissible. Also, despite ruling against them... Did not the expert, did not they challenge the expert in their answering brief and you deal with it in your reply brief? They challenged it in a footnote with no argument. They simply said that he did not meet the standards for admissibility. We did respond briefly, as much as we were able to, without any specific points challenged as to how he failed. Why couldn't you provide specifics? Actually, it's our contention that we did. We argue that he absolutely satisfied the initial showing of admissibility because his methodology was reliable and relevant and used by scientists in the field, and then the burden would have turned to the state to come forward with evidence demonstrating how he did not follow the proper methodology. Okay, thank you. Finally, the district court also ruled against appellants on the merits but also concluded that appellants lacked standing. The court was wrong on all counts and should be reversed for all of those reasons. I'll briefly address the issue of standing. It's clear appellants were injured by the law and have standing to challenge this law. Conservative enthusiasts halted plans to change its organizational structure to reach out to citizens and engage in more direct contact. Once it learned of the law, that is an injury sufficient to satisfy standing. MCOM, Many Cultures, One Message, now carefully tracks what it spends and avoids getting close to the $500 level in order to avoid compliance. That is injury sufficient to satisfy standing. A donor also withdrew a substantial donation of support to conservative enthusiasts. After learning about the law and learning that its donation could be disclosed, that is sufficient to satisfy standing, an injury sufficient to satisfy standing. How was that particular donor identified? Yes, in depositions. We understand it was a Ford dealership that was going to provide between a $500 or $1,000 donation to appellants. Appellants demonstrated that they had a well-founded fear that the law would be applied to them. The PDC said it would. It issued a declaratory ruling in this case saying if they engaged in their activities, the law would be applied. Let's assume then for purposes of argument that either or both have standing. Okay, thank you. We argue the law fails for a number of reasons. Primarily or initially I would argue that the law is unconstitutionally vague. There's a number of ways that the law is unconstitutionally vague. First and foremost, the definition of legislation is unconstitutionally vague because it fails to define what is prohibited. It delegates matters to the government for ad hoc resolution and it abuts on sensitive First Amendment rights. What's ambiguous about the word or vague about the word legislation? The way legislation is defined in the law, it includes bills, resolutions, things that folks would normally assume legislation covers. But there is also a phrase that states that legislation includes any other matter that may come before the legislature. As we demonstrated in our brief, there's almost an endless possibility of matters that may come before the legislature. Not having any specific guidance as to what the law covers and what it doesn't cover renders the law unconstitutionally vague. It's the PDC position that the law is to be read as broadly as possible. The PDC was a party to the Peacock case, and in that case an individual claimed they did not have to register and report under the grassroots lobbying law because there's no specific or proposed bill pending before the legislature in the matter in which they were acting. The PDC said, well, at some point this matter may come before the legislature if you're successful in your efforts here. It's not before the legislature now, but it may come before the legislature, so you have to register. So why is this vague? It sounds pretty broad, and given its breadth, it's not vague at all. You may think it's too broad. That may be a different argument, but that doesn't sound at the moment that it's vague. I believe it's vague, Your Honor, because it doesn't provide clear guidance as to what is covered. Well, it sounds as though everything is covered. You want to talk about the price of cat food, that may come before the legislature. Bingo, it's covered. Precisely. Well, no, but that's not vague then. That's broad. It's our contention that it's vague and broad, and, Your Honor, the statute doesn't fail just because of this term legislation. There are other terms within the statute. For example, substantial part primarily designed to influence legislation, et cetera. For example, in the record, the PDC couldn't answer simple questions as to what's covered, what's not covered. One of our clients, conservative enthusiasts, does a lot of work on the Internet. The PDC has testified that there are no guidelines or rules regarding whether you have to report your website hosting expenses or computer, any of those expenses related to maintaining and conducting Internet or computer-based lobbying. The PDC director of compliance said, just give us a call, we'll put our heads together, and we'll slice it and dice it and figure this out. That in and of itself shows that there are no guidelines, and you have to turn to the government to figure out what is permissible before you can and can't speak. Well, there are often laws that can be upheld if there is an opportunity as applied to narrow it. So there is a process to narrow it. For example, we just heard in the last case, the probation officer will tell the defendants whether or not they're violating. So how do those cases, not the criminal cases, how do the First Amendment as applied cases play into this? Under a facial attack, we have to look for any way that the statute can be constitutionally applied. Precisely. I think the problem here is we're talking about the First Amendment context where individuals should not be required to go to the government and ask permission before they are permitted to speak to their neighbors, issue a newsletter, host a neighborhood barbecue. The fact that the government may be able to provide some guidance doesn't cure the constitutional issues in this particular law. So we come back to what you said earlier. You said that at least in the many cultures that went to the PDC and got a declaratory ruling that what they were proposing would be covered. So are you now relying on as applied, or are you just now going back and saying they shouldn't have had to go in the first place? They shouldn't have had to go in the first place. And it was both clients, first of all, Your Honor. Many cultures, One Message and conservative enthusiasts were jointly asked the PDC. Okay. But the problem is that knowing that you need to report and provide disclosure doesn't solve the question of what needs to be reported, what needs to be disclosed. The yes, you need to report doesn't answer these many questions. Well, it's pretty clear what needs to be disclosed. What you're arguing about, I think, is what triggers the obligation to disclose. I don't know that anything in this law is clear, Your Honor. I'll say that. But we do have problems both with the triggering and then once it is triggered, what needs to be reported. There's testimony that if either one of these groups had a neighborhood barbecue, the expenses related to that would be reportable. Once you hit the $500 threshold mark, anything and everything related to that speech must be reported. And it's not entirely clear how far that goes. The PDC has said a box of staples, a box of donuts, hot dogs. Let me ask it this way, and I realize I'm cutting into the five minutes you wanted to reserve. If you look at the Canyon Ferry decision written by Judge Canby, he says, well, there's nothing here in terms of the definition of something of value under Montana law that's invalid on its face. It's not vague on its face. But then, because the application was really weird, it was treating as something of value. It's basically somebody stood up and said something. Somebody used the Xerox machine and so on. He says, well, if that's what it means, it's vague as applied. In other words, it's really going so far outside any reasonable understanding of the term value that it's vague as applied. I share Judge Fisher's instinct that if we're asking about invalid on its face, this is not invalid on its face. So I ask you, has either of your clients experienced an application of the statute that is so far outside a reasonable definition, understanding of the definition, that it's vague as applied to your clients? Yes. Okay. So what is it? So I will make clear that neither one of our clients have had to report yet. Once they've learned of this law, they ratcheted back their activities purposely to avoid complying with the law. And what particular activities that might have had some impact on legislation whose definition you object to were ratcheted back so that I can try and figure out whether it has been vague as applied as to your clients? Precisely. Conservative Enthusiasts are a 501C4 organization, so they had plans to completely change their structure so they could conduct essentially citizen-to-citizen speech or indirect lobbying. I'm asking, what particular lobbying was it that seems to you so far outside the definition of the statute that that would be vague as applied? I guess the question is, I'm not following your question. Are you asking what activities they were trying to report and what activities? I'll try to be as clear as I can, and it's not your fault you're having trouble understanding me. It may be the formulation of my questions. I'm not asking about what they're reporting as to who's funding and so on. I'm asking rather as what activities have they engaged in or what activities would they engage in that they say, well, you know, that's so unlikely. That's so unrelated to any reasonable definition of what you've got here as legislation that it's vague as applied. Sure. I follow you. Thank you. Essentially, the Conservative Enthusiasts, for example, their whole purpose, they're a self-described Tea Party group. Their whole purpose is to talk about limited government and lowering the size of taxes. They don't know what they can speak about. The state has said it only is issues that are state issues, but as we demonstrated in our brief, any number of issues can be both state issues, federal issues, local issues. They don't know if they're speaking out about Washington State's implementation of the Federal Affordable Health Care Act, if that is covered by the term legislation or if it's not, because it's kind of a hybrid state-federal issue. And have they asked any questions to the state to clarify whether these would be covered under the state's idea of the definition? They, in their declaratory order request, they specified exactly the activities they wanted to engage in, and the state said that if they engaged in those activities, they would be required to register and report. Okay. So I can figure out then how the state defines it. Precisely. Okay. I'll reserve the remainder of my time, which is essentially up to you. Five seconds that you owe us.  Thank you, Your Honor. We'll hear from the state, but we will give you a chance to respond. Thank you. Your Honor, just a point of clarification. I believe we were notified we had 20 minutes aside. Do we only have 15? Oh. That's 20 on my part. I'm sorry. I was not paying attention to this. Well, you know what? You saved five minutes. I was going to say, I think she has a lot more time than I thought. Thank you for the help. I missed this. That's all right. Not a problem. Okay. Here we go. May it please the Court, for the record, my name is Linda Dalton. I'm a senior assistant attorney general representing the state, as well as defendants in this action. At the outset, I'd like to state that Washington citizens have long insisted on transparency in elections and lobbying of government. Like this Court has recognized in other challenges to other provisions of the state's disclosure laws, the grassroots lobbying disclosure law is constitutional. I don't think we've – you're not suggesting we've already ruled on this kind of disclosure? No. Okay. Thank you. I'm just noting that our disclosure law is all part of a giant matrix of disclosure, that lobbying the legislature is just one aspect of, and this is another challenge to that larger scheme of disclosure. At the outset, we believe that the district court properly determined that the plaintiffs in this case, and we colloquially called it MCOM for a long time, so that's what I will – We know who you're referring to. Thank you. That neither MCOM or conservative enthusiast had demonstrated the proper standing of an actual case or controversy that this court should be considering or that the court below should have considered. As such, we believe the district court's decision in this case, in all aspects of this case, was the appropriate one, and we're asking the court to affirm the district court's opinion. And I'd like to start with standing, if you don't mind. The burden is on MCOM and conservative enthusiasts to demonstrate that they had standing, and we believe the record that you have before you, that they don't meet that burden. They did not provide the sufficient establishment of an injury in fact, sustain the first step of the test for standing, and we believe that for several reasons. First, if you evaluate the evidence that was available about what these groups really were doing, they never engaged, despite some representations being in some of the briefing, that they had actually been involved in grassroots lobbying. So they had never been actually subjected to grassroots lobbying. Many Cultures One Message was actually a local group based out of South Seattle, and they were very interested in the issues of eminent domain that was affecting their neighborhoods, and the majority of their behaviors and their focus was on those laws as they applied at the local level, not at a statewide level. You say the majority. Yes. What about the non-majority of their efforts? The only other effort that is in the record is direct lobbying activities by Ms. Murakami and Mr. Akers. They directly lobbied the legislature. Those activities would not be covered by this disclosure law. So no evidence whatsoever with respect to their behaviors and being affected by this law. What about the evidence that the threat of disclosure of names has led to reduced fundraising on their part? I'm going to approach that in two different ways. Let's start with the example you were given. That had to do with the conservative enthusiasts, and the only evidence in the record is this vague reference to a Ford dealership who wanted to give conservative enthusiasts money. As long as that money wasn't earmarked for a specific program that would trigger this reporting statute, they could accept that money. How did they know that? Because the statute says that. Where does it say that? The statute says is that the statute plus Washington State Appellate Court's interpretation of that statute. So the statute says that the disclosure of expenditures is triggered by a presentation of a program to the general public, a substantial portion of which is intended or designed. Excuse me. I'm looking at the statute, and I'm not sure if you're saying just what the statute says or some gloss put on by the court. So just take that. It says in presenting a program to the public. It doesn't say the general public. So public would be something going beyond their neighborhood or even just in their neighborhood. Would it not? It goes beyond their membership. So it's something beyond their membership. And how do they know that? Because the case law out of Washington says that. Okay, it's case law. Yes. Young Americans for Freedom, the Washington Supreme Court said that, and again, in evaluating the Peacock case. So those interpretations of Washington State law by the Washington Appellate Courts put that gloss on these words. And so if the individual just gave the money to conservative enthusiasm, as long as it wasn't earmarked, as the Washington Supreme Court says, then they don't have to disclose those contributors. Now, okay, now I don't want to interrupt your full answer to Judge Fletcher, but counsel has said that they went to the PDC and they described what they were going to do and the PDC ruled that they would be covered. So what was it that the PDC was relying on? The Public Disclosure Commission, the question that was put to them and the focus of that question is identified at Excerpts of Record 619. And the primary focus of that is whether these groups would be exempt from disclosure on another portion of the campaign finance disclosure laws. And so the focus is on that exemption, whether they fell within some of these other categories that would, and primarily the Subsection 4 category because they weren't the governor, the lieutenant governor, or a member of the media. And so when they did that analysis and that focus, what they came at the bottom line is because you don't fit within that exemption, if you engage in behaviors that would trigger reporting under the statute, which is a very narrow triggering, it's not very broad-based as has been suggested to you, then there would be a reporting responsibility. Going back, because I don't want to lose sight of the question that you had about this idea of volunteers and reporting volunteers. This law does not require the reporting of volunteers. I didn't ask about volunteers. I asked about people wanting to contribute money who say, because I have some risk of my main name being disclosed as a contributor, I'm not going to give you any money. Right. I was not talking about volunteers. Okay. There's been some suggestion in the briefing that that would include individuals who wanted to give small amounts of money to many cultures, one message. That may be in the briefs, but that wasn't my question. But the same theory applies in that circumstance, as would apply to the Ford dealership, over whom that's all we know from the record is it was a Ford dealership. There's a lot to talk about, so maybe let's assume for the moment that they're standing. Yes. Let's get to the merits and this question of vagueness. Sure. How would you respond? I would respond that the statute is not vague. Because? Because it properly identifies the behaviors that are required to be reported, and because while the topics about which the law could apply to, or the behaviors, the programs, so to speak, may be broad, they're not overly broad, and they are narrowed by the confines of the statute. The statute is really only triggered when there's been spending to a specific threshold. Pretty low. $500 for a month or $1,000 over three months. That's pretty low. Or, well, that spending threshold and that there is a specific identified program or topic. Okay. And I'd like to stay with the language of the statute, if we could, to follow that. So I'm going to let you keep on going. But just to pinpoint, because they picked on legislation. Right. And I do want to get to that. I know you do. So one thing I notice, consistent with what you've been leading up to, it says what they have to disclose if they are triggered, they have to disclose the purpose of the campaign. This is subsection D under 2. Including the specific legislation, rules, rates, standards, or proposals that are the subject matter of the campaign. That sounds very narrow. I would agree that that is narrow. Okay. Then you go over to the definition of legislation, and the legislation expands it to any other matter that may be the subject of action by either House or any committees of the legislature. Obamacare, as was given, although it was now referred to as Affordable Care Act, but since the president has endorsed it either way, that would be an example that something may be. So that would fit the specific legislation or proposal language, or is it, in other words, what ties it down to just anything that may come before the legislature? You know, they want to talk about imposing a minimum speed limit on Washington highways or increasing the support for local schools or whatever they're talking about. Any of that would, there's nothing specific in front of the legislature at the time, but it may come before the legislature. It's tied down by several things. The first thing is I think this fits within the idea of the proposal. In the Peacock case, there was petition gathering that was going on that eventually, in order for their petition to be enacted, it had to be acted on by the legislature. And the appellate courts in Washington said, yes, that falls within the definition because it is something that would ultimately get to the legislature. And, again, the other thing that limits this is it's a call to action. It's not simply issue advocacy, which you're familiar with. It's not this, no matter who's doing it, grassroots or otherwise, it's not the we have a very strong feeling about this issue, Obamacare, which the state has actually been subject to some legislation, implementation legislation. It is about that next step. It is not implicated until that next step is taken, which is to motivate, to ask the public to contact their legislature. And that's in Peacock? That's in Peacock. That's in Young Americans for Freedom. That discussion is that motivation. In the Young Americans case, they were very concerned with these reports that if they were to identify everybody who gave Young Americans money that all of a sudden they would be disclosing their membership list. And Peacock specifically says people that give to the general fund of these organizations, when the organization then spends its money, unless it has money that's earmarked, you don't have to disclose that as a contribution. So the limiting comes from that next step. It's not just a discussion of the issues. It's the next step in identifying what you want the public to do for you as a sponsor, what you want them to take action about. And unless you have those words, this statute doesn't apply. So while this may seem like broad, it is not overly broad, because it is actually limited by the terms of the statute itself. Well, as glossed by the courts, it sounds like. Not just the words, but by the gloss that the Washington courts have put on it. There have been a couple other declaratory orders issued by the Public Disclosure Commission at the earlier stages of this law when, remarkably so, 40 years ago this week, the law passed. And so there were, in the implementation stage, a couple of attorney general opinions that were asked about the entire law, and one of them is subject of this particular part of the law. So it doesn't lead you to this idea. Just to clarify, I'm just looking for my notes here. Peacock and Young Americans for Freedom are court cases. Washington appellate court cases. Yes, and then they're also PDC rulings. They're mentioned in the briefing. Yes, as well as an attorney general opinion. That's okay. I just wanted to make an AG opinion. It's okay. Yes. Thank you. So this law really isn't so unclear that, as the evidence in the record shows, there are 208 sponsors of grassroots lobbying that have successfully filed over 1,600 reports since 2000. And there's millions of dollars that are contained within those reports about activity. So when you ask the question about facial challenge versus as applied, with respect to a facial challenge, if you were to find that this statute was facially unconstitutional, millions of dollars. There's an entire loophole that would be created in disclosure in Washington. And the Washington Supreme Court recognized that difficulty in creating that loophole when it determined that this statute was constitutional. We've talked about standing. We've talked about vagueness. We've talked about the over breadth. I want to spend just a few minutes, if you had questions about the experts. Could you please address the experts? Yes, I'd be happy to. The district court has broad discretion, under an abusive discretion, to determine what she believed to be necessary for her to have to decide this case. This isn't a situation in which she very passively said, oh, yes, I see that, but I'm not going to consider it. She went through a very long and thorough analysis of the Daubert standard of reliability, of relevance, in making the determination that she did not believe that this report and this information would be helpful to her, which is one of the Dauberts under the rule of evidence 702. That's what the expert reports are designed to do, is to be helpful to the court. And in doing her analysis, she determined that it wasn't. It contained legal conclusions that she did not believe were appropriate. She questioned the connection to the information and the application to the state of Washington, the law that she was having to interpret and make a decision about. I'm a little troubled, I have to say, by the procedure. I'm accustomed to Daubert hearings, or at least serious argument about Daubert. There doesn't seem to have been much. Well, the courts, this particular circuit has not required an actual hearing. Your Hanford case, the Mellencamp case, the courts didn't hold hearings in that and actually said they weren't required to. I understand that, but I am accustomed to a little more than went on here. Well, what you have here, though, is you have all the information that would have been made available to her. You had the CV. You had the report. You had deposition transcript. You had all of those same elements that you had in Hanford and in Mellencamp, and I believe Alatorre. You had all of those elements in this case that she was able to evaluate. You have on reply, you have the statement from the plaintiffs here that the court had what it needed and that Daubert was satisfied with what she had. She took that at face value and made a determination that, okay, I have it all. She reviewed it all. There's no question that she reviewed it all because, in her opinion, it cites to all different provisions of all of those documents that she had before her. So to suggest that somehow that her discretion, you know, she abused her discretion doesn't fit within the evidence that you have before you in this particular case, and she had the opportunity. They had an opportunity to ask for a hearing, did not ask for a hearing. There was a significant amount of time from the close of briefing to the actual issuance of the decision, no request for a hearing, no request for reconsideration for her to ask for that hearing. So based on the jurisprudence from the circuit and her behavior we believe that she properly rejected the expert's opinion. Okay. Unless you have any other questions, I'd just like to close with this idea that this law has been on the books and has been working, and this is the first time that anyone has challenged its constitutionality. Not that that necessarily is a deal breaker in the big scheme, but the type of fear and the type of concerns that are raised are really adequately addressed by the language of the statute itself. And it's the gloss from the courts below. And I would ask that you find, as another panel of this court, that the right of the people to be informed about who's speaking to them, about who's spending the money to try to influence their action, is an appropriate governmental interest, and it does fit exacting scrutiny and that you affirm the constitutionality of the statute. Okay. Thank you. Thank you. I would just like to touch on a few things here. First, with regards to the procedure or the process that was used in addressing the admissibility of the expert. Appellants here have uncovered no case where a court has used the process that the district court used here and struck the testimony of an expert. While hearings are not necessarily required, some sort of process is required, particularly when the case is before a judge as opposed to a jury and when the case is going to be dismissed on summary judgment and when there are clear issues of fact that we point out in our brief, the district court just flat out got wrong. Had the district court given appellants an opportunity to put the expert on the stand and answer the questions that the district court so clearly had, we could have fleshed out a lot of the errors that the district court included in the decision and which colored the decision to exclude the expert. The fact that the district court relied on errors of fact in and of itself is abuse of discretion and the ruling should be overturned on that ground alone with regards to the expert. With regards to the vagueness of the statute and your Honor's questions about the process and whether this clarified things for our clients, the process actually here muddied the statute and made things less clear. One of the questions the appellants had posed to the PDC was whether the unpaid lobbyist exemption applied to their activities. There are a number of manuals and reports and declaratory orders that folks can review to, as your Honors have noticed, put a gloss on this statute and try to figure out what it means, one of which is a PDC lobby manual. It's in the record at ER 692. The lobby manual itself provides a description of grassroots lobbying and says as one of the examples that someone that has unpaid lobbyists could fall within the unpaid lobbyist exemption, and the example given in the lobby manual is a neighborhood citizen group. This is precisely who you have before you today, and we still don't understand why the unpaid lobbyist exemption doesn't apply here. The PDC ruled that that exemption only applies to direct lobbying, not indirect lobbying. We don't see where that is stated in the language of the statute, so their interpretation has made things worse, not better, more vague, not less vague. The state implies that this is this carefully calibrated system of disclosure, and if one piece of this matrix or this mosaic is to be removed, the whole thing will fall apart. But appellants' review of the statute indicates that there are so many carve-outs and exemptions and exceptions to the law that the only folks that are left that are being required to register or report under this law are small neighborhood citizen groups like Many Cultures, One Message and appellants, conservative enthusiasts. The professional lobbyists have to file and register and report even grassroots lobbying activities under the professional lobbyist provisions, as do a number of other government officials. So if we were to, if this court were to conclude that this law is unconstitutional as we allege that it is, this whole system, this mosaic, or as we would probably term it a kaleidoscope of unclarity, would not have any ramifications on not having information that the public may rightfully deserve to have about its elected officials. The application of this law is a serious infringement on First Amendment rights of citizens who wish to speak to other citizens about public issues. We would ask that this court rule that it's unconstitutional. Okay. Thank you very much. Thank you. I thank both sides for your arguments. Thank you. The case Many Cultures, One Message v. Clements now submitted for decision.
judges: Quist, Fletcher, Fisher